WADSWORTH (ARDREY v.). See Case No. 512.

## Case No. 17,032.

### WADSWORTH v. TYLER.

[2 N. B. R. 316 (Quarto, 101); 2 Am. Law T. Rep. Bankr. 28; 1 Chi. Leg. News, 139.] 1

District Court, D. Connecticut. Dec., 1868.

BANKRUPTCY—PREFERENCES—TRANSFER OF PROPERTY TO CREDITOR IN PURSUANCE OF PRIOR AGREEMENT.

1. In an action of trover brought by an assignee in bankruptcy against a creditor, to recover the value of certain property transferred by the bankrupt to him within four months preceding the adjudication of bankruptcy, it not being shown that a preference of creditors or a fraud on the act was thereby intended, and that the transfer was made in pursuance of an agreement entered into long before, *held*, that the assignee could not recover.

[Cited in Re Gregg, Case No. 5,797; Marble v. Fulton, Id. 9,059; Re Jackson Iron Manuf'g Co., Id. 7,153.]

[2. Advances made in good faith to a debtor carrying on business, upon security taken at the time, do not violate either the terms or policy of the bankrupt act.]

[Cited in Darby v. Boatman's Sav. Inst., Case No. 3,571; Tiffany v. Boatman's Sav. Inst., 18 Wall. (85 U. S.) 389.]

[This was an action by Winthrop M. Wadsworth, assignee in bankruptcy of Robert R. Treadwell, against Edwin S. Tyler.]

---

1 [Reprinted from 2 N. B. R. 316 (Quarto, 101), by permission. 1 Chi. Leg. News, 139, contains only a partial report.]

SHIPMAN, District Judge. This is an action of-trover to recover the value of certain articles of personal property, among which was a quantity of anthracite coal. The property originally belonged to the bankrupt, and the assignee claims that the title passed to him by virtue of the proceedings in bankruptcy in this court against Treadwell, but alleges that the defendant has converted them to his own use. The usual demand and refusal have been proved. The defendant admits the taking, and justifies on the ground that the title was lawfully vested in him before the proceedings in bankruptcy were commenced. This admission, however, only covers a quantity of coal which constituted the bulk of the property converted, and certain book accounts. Treadwell has been put into bankruptcy upon petition of his creditors, under the act of congress, approved March 2, 1867 [14 Stat. 517], and the plaintiff appointed assignee. From the proofs it appears that Treadwell went into the business of buying and selling coal at Middletown, in this state, in the spring of 1866. At the commencement of his business he received assurance from the defendant, who is his brother-in-law, that he would, from time to time, render him assistance, which he did by trusting him for coal sold, advancing him money, and endorsing his notes, whereby Treadwell became lawfully indebted to him. At the outset of the business there was an understanding entered into between them, that Treadwell should give an absolute bill of sale to the defendant of the stock.of coal on hand in the yard where Treadwell carried on the business, together with all book accounts due him for the sale of coal in Middletown, where all his sales were made. The object of the bill of sale was understood between the parties to be for the purpose of enabling the defendant to take possession of the property at any time he chose, in order to protect himself for advances made, credit entered, and liabilities incurred, on account of Treadwell. The business was commenced in April, 1866, but no bill of sale was executed till the 16th of January, 1867, when, as the course of the business of Treadwell was not satisfactory to the defendant, he insisted upon having the bill of sale made and delivered to him, which, from the cancellation of the stamps affixed thereto, appears to have been done on the 22d of January, 1867, though the date of the instrument is the 16th. Treadwell continued the business in his own name down to the 22d of June, 1867, when, from his neglect to properly attend to it, it became quite apparent to the defendant that the only safe course was for him to arrest it by taking the property into his own hands and closing it up, in order to protect himself. He therefore sent an agent to Middletown, and took possession of the coal on the day last named. Both at the time the bill of sale was executed and delivered, and at the time possession was taken under it, Treadwell's indebtedness to the defendant exceeded the value of the property taken. The defendant was also responsible for a still further sum, as endorser on Treadwell's

paper. There is not sufficient evidence to prove that the defendant had reason to suppose that Treadwell was indebted to other parties, and I find, as matter of fact from the evidence, assuming the burden of proof to be on him, that he had no reason to suppose that such was the case, until after the 22d of June, 1867. He well knew, however, that Treadwell was insolvent, using that term in its largest sense, for the latter owed him not only more than he could then pay, but more than his whole assets were worth, if disposed of under the most favorable circumstances and at their full value. Treadwell, however, both at the time of the execution and delivery of the bill of sale, and at the time of his surrender of the property to the defendant under it, not only knew that he was hopelessly insolvent, but that he owed at least one creditor other than the defendant, a large sum; and he well knew when he made the transfer (which included all his assets except a few articles of trifling value), that the effect would be to prefer the defendant as a creditor. The suit is brought not only to recover the value of the coal and book accounts, but also the value of a safe, and certain articles of office furniture. The bill of sale only included the coal and book accounts, and the defendant has never taken possession nor assumed control over the other articles. Some time after taking possession of the coal, the defendant obtained from Treadwell a transcript of some of the accounts on the books, and proceeded to collect them. At this time he well knew that there were other claims against Treadwell, and I find, as matter of fact, that he both knew at that time that Treadwell was insolvent, and that he sent him these accounts to collect for the purpose of preferring the defendant as a creditor to that extent, in fraud of the bankrupt act. The defendant is, therefore, liable to the trustee for the amount so collected, but not in this form of action. For the value of the safe and office furniture he is not liable, as they have never been in his possession, nor has he assumed any control over them. On the 11th day of September, 1867, Treadwell was declared a bankrupt by the judgment of this court, upon the petition of another creditor, who has filed a large claim against his estate. The plaintiff was duly appointed and qualified assignee, and after demand of the property in question and refusal by the defendant, he has brought this suit to recover its value.

In addition to the facts already found, I find further that the value of the coal taken by the defendant on the 22d of June, 1867, was two thousand and twenty-one dollars and fifty cents, and that he took the same in good faith under his bill of sale, to secure as far as it would go his own debt, and to protect himself from the consequences of Treadwell's mismanagement and improvidence in his business, and not from any design to defraud other creditors; though, in fact, his appropriation of the coal must have the effect, if sustained by the court, to deprive them of their debts, as it will leave the estate substantially without assets. A jury was duly

waived, and the case tried to the court. The facts found raise a question of law, and though the amount in controversy is not large, the principles involved are of considerable importance. This question is now to be disposed of. As already stated, Treadwell has been adjudged a bankrupt by this court upon the petition of one of his creditors. The petition was filed on the 4th day of September, 1867, and the adjudication made on the 11th day of September, 1867.

The question presented is whether the transfer of the coal to the defendant on the 22d of June, 1867, under the circumstances, was valid or not, as against the title set up by the assignee. This, under the facts found, depends upon the construction to be given to a part of the thirty-ninth section of the bankrupt act. This section relates to proceedings in involuntary bankruptcy, and after reciting those acts of the debtor which shall be deemed acts of bankruptcy, including transfers of his property with intent to give a preference to one or more of his creditors. provides that "if such person shall be adjudged a bankrupt, the assignee may recover back the money or property so conveyed, sold, assigned, or transferred contrary to this act, provided the person receiving such payment or conveyance has reasonable cause to believe that a fraud on this act was intended, or that the debtor was insolvent, and such creditor shall not be allowed to prove his debt in bankruptcy." If this passage is applied according to its literal terms to the present case, the question under consideration will be easily solved, for it is found as a fact that the defendant knew that Treadwell was hopelessly insolvent, in other words that he owed the defendant more than his whole assets would pay, under whatever circumstances they might be disposed of. The letter of the statute requires nothing more. Reason to believe the debtor was insolvent, and reason to believe that he was intending a fraud on the act, are separated by the disjunctive "or." In other words, two circumstances are stated, either one of which renders the sale or conveyance void. First, reason on part of the creditor or vendee to believe that the debtor intended a fraud on the act. Second, reason on his part to believe that the debtor was insolvent. The fact is found that the defendant knew that the debtor was insolvent, or, in other words, knew that he owed him more than he had the means or ability to pay. But before accepting this literal interpretation of this clause of the statute, it is important to look at the thirty-fifth section of the same act. Judge Blatchford has held, in Re Black [Case No. 1,457], that "the two sections are in pari materia, and must be construed together." He says also that "there is, however, no conflict between them, and they are of the same purport and tenor." The thirty-fifth section deals with fraudulent preferences and conveyances, and provides "that if any person being insolvent, or in contemplation of his insolvency, within four months before the filing of the petition by or against him, with a view

to give a preference to a creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered. or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the value from the person so receiving it, or so to be benefited; and if any person being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, or conveyance, or other disposition of any part of his property, to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of his insolvency, and that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent the same from being distributed under the provision of this act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade the provisions of this act, the sale, assignment, transfer, or conveyance shall be void and the assignee may recover the property or the value thereof as assets of the bankrupt. And if such sale, assignment, transfer or conveyance is not made in the usual and ordinary course of business of the debtor, the fact should be prima facie evidence of fraud." It will be seen at a glance that this thirty-fifth section renders the transfer of the property of the insolvent debtor void only when the party benefited by such transfer, or receiving it, has reason to believe both that the debtor is insolvent, and that a fraud on this act was intended.

These two aspects of the debtor's condition and intent, must concur or present themselves to the view of the creditor or vendee. The propriety of this is obvious, for by any other rule it would be extremely dangerous for any person, however upright his intentions, to deal with another who is embarrassed in his affairs, and, temporarily even, deprived of the ability to meet his engagements. Insolvency, as used in the law, when referring to debtors, does not mean absolute inability ultimately to pay, but present inability to meet engagements in the course of business. Thompson v. Thompson, 4 Cush. 127; Lee v. Kilburn, 3 Gray, 594. A man may purchase property in perfect good faith of one in embarrassed circumstances, and thereby aid him in relieving himself from the pressure of his claims. The very purchase may save the debtor from final bankruptcy, and restore him at least to temporary solvency. For this reason sales made by one known to be insolvent are, by this thirty-fifth section, left un-

der the protection of law, unless the purchaser has reason to believe that the object of the debtor is to prefer a creditor, or in some way work a fraud on the law by preventing an equal distribution of his assets among his creditors generally. In this section, purchasers who are strangers, and creditors who received the property of the insolvent in payment or part payment of debts, are placed upon the same footing. It is true, that courts of justice should look with scrutiny into the transactions of insolvents, which immediately precede their final bankruptcy, especially transactions with their creditors relating to the transfer of property. But, under this section of the bankrupt act, they have no authority to declare a transfer void, unless the party who receives it has reason to believe that it was intended to prefer one creditor over another, or in some way to defeat or delay the operation of the act. And this section is the one which relates particularly to fraudulent preferences and conveyances. and undoubtedly was intended to declare precisely under what circumstances any appropriation of the property of an insolvent debtor for the benefit of any person, whether to a creditor or by way of a sale to a stranger, should be defeated. As I have already stated, the thirty-ninth section of the act defines what acts of the debtor shall be considered sufficient grounds for declaring him a bankrupt on petition of a creditor. Certain dispositions of the debtor's property are included among these acts. and the right of the assignee to recover from the person to whom the transfer may have been made is again declared, in substantially the same terms as in the thirty-fifth section, except that the word "or" is used instead of "and," when referring to the reason the creditor may have to believe in the insolvency of the debtor, and in the intent with which he disposes of his property in the given case. In one section the conveyance can only be defeated by proof that the creditor or vendee had reason to believe that the debtor was insolvent, "and" intended a preference or a fraud. while in the other, proof of either one is sufficient.

After a careful consideration of the question, I cannot bring my mind to the conclusion that any such distinction was intended by the legislature. No good reason has been shown in support of the claim beyond the literal reading, and none is perceived by the court. I therefore conclude that they should be construed as speaking the same language on this point; and as the rule prescribed by the thirty-fifth section is more consonant to reason and security in the transaction of business, I hold that it is the one intended, and the distinction raised by the letter of the twenty-ninth section must yield. It follows, from the facts found, that the assignee can recover nothing in this action. The evidence upon which these facts have been found is somewhat peculiar, and does not bring the case within the ordinary range of controversies between the creditors of a bankrupt. The debts alleged to be due creditors other than the defendant, almost wholly grew out of trans-

actions having no connection with the coal business in which the bankrupt was engaged, and there is no proof that the defendant had any knowledge of the existence of these claims. The evidence is that he arrested the business of the bankrupt, and took the property into his possession, not to defeat the claims of other creditors, but to save what he could from the imprudence and mismanagement of the bankrupt, whom he had aided, and with whose irregularities and follies he had long borne. He did this in pursuance of an agreement entered into long before this law was passed. Still, I have regarded the transfer of the coal, and the taking possession of it by the defendant, as out of the regular course of business, and as making . prima facie case against him, agreeable to the thirty-fifth section of the act, and I think he has overcome the legal presumption by such proof as entitles him to judgment. Let judgment be entered for the defendant.